IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

FAYEGH JADALI, M.D., Ph.D.,    )
                               )
            Plaintiff,         )
                               )
      v.                       )      1:04CV00214
                               )
ALAMANCE REGIONAL MEDICAL CENTER, )
                               )
            Defendant.         )

## ORDER AND RECOMMENDATION OF MAGISTRATE JUDGE ELIASON

### Procedural History

Plaintiff, a physician licensed to practice in the State of North Carolina, originally filed a complaint in the state courts alleging that defendant violated an unidentified patient's rights act, violated its own bylaws (breach of contract), and discriminated against him on the basis of national origin. After the case was removed to this Court, plaintiff clarified his claims in open court. He stated that the national origin discrimination claim was being brought under 42 U.S.C. § 1981. He also expressed an interest in raising claims under 42 U.S.C. § 1983, the Sherman Act, 15 U.S.C. § 1, et seq., and the Clayton Act, 15 U.S.C. § 15. He was advised by the Court that the original complaint did not contain such claims and that he would have to move to amend his complaint in order to raise them.

Plaintiff did later file a motion to amend his complaint to add the claims he spoke about in court. He also added a reference to the Health Care Quality Improvement Act, 42 U.S.C. §§ 11101-11152, but did not appear to be seeking to raise a claim under that

Act. The motion to amend was opposed by defendant and the undersigned denied the motion after finding that it failed to state any claims for relief and was, therefore, futile.

The case proceeded through discovery on the claims contained in the original complaint. Defendant has now moved for summary judgment as to those claims. Also, plaintiff has filed a motion to file certain exhibits with the Court and defendant has filed a motion to strike plaintiff's expert designations. All of these motions are now before the Court for decision.[1]

Before setting out the facts of the case and addressing the motion for summary judgment, the Court will first decide the other two motions so that the contents of the record can be made clear. Regarding the motion to strike plaintiff's expert witness designations, it appears that plaintiff, who is acting pro se, may not have complied with the Court's scheduling order or the applicable Rules of Civil Procedure in designating his experts. However, defendant's motion can be granted for a more basic reason. In his response to defendant's motion to strike, plaintiff states that he wishes to have an expert testify as to the general qualifications needed to perform certain tests and as to whether defendant's participation in an exclusive contract for radiological services is really an appropriate way to provide quality health care. As will be discussed below, these issues are not relevant to

---

[1] The docket sheet in the case lists a fourth motion which is denominated as "Supplemental Amended Motion" on the docket sheet. (Docket no. 41) However, this appears to be in error. A review of the document's title and its body shows it to be merely a supplemental evidentiary attachment to defendant's motion for summary judgment. It is not a separate motion and will not be treated as such.

the claims raised by plaintiff. Therefore, the motion to strike is granted.

The plaintiff's motion to file exhibits is a different matter. Defendant actually states in its response to that motion that it does not oppose the filing of the exhibits, but only plaintiff's assertion that the exhibits preclude the granting of defendant's motion for summary judgment. The exhibits themselves consist mainly of deposition testimony, copies of defendant's bylaws, and some letters and petitions. They are the sort of exhibits that would normally be filed as attachments to plaintiff's response to the motion for summary judgment, but plaintiff, being a pro se litigant, may not have realized this. Because of this and because the filing of the exhibits is unopposed and the documents are of the type normally filed as exhibits opposing summary judgment, the Court will grant plaintiff's motion to file them. Any assertions regarding their effect on the motion for summary judgment will be addressed below along with that motion.

## Facts

The facts of the case are essentially undisputed. As noted earlier, plaintiff is a licensed physician. Defendant is a community hospital. Plaintiff is board certified in Internal Medicine and Nuclear Medicine and has a Ph.D. in Nuclear Physics. Also, as part of his training, he has had fellowships in Positron Emission Tomography (PET) and Endocrinology. (Complaint ¶ 4) He was born in Iran, but moved to the United States in 1988. (Pl. Dep. p. 6) In 1997, he came to North Carolina and was subsequently

-3-

given staff privileges by defendant in the areas of internal medicine, nuclear cardiology studies, lymphscintogragh, and radioisotope therapy injections. (Id. pp. 22, 31, 34; Currin Aff. ¶ 4) The last three areas are considered parts of "nuclear medicine."

On October 28, 2002, plaintiff sent a letter requesting that he be granted privileges to interpret studies in nuclear medicine and to interpret PET scans. He knew at the time that he submitted the letter that defendant did not have a PET scanner, but also knew that there was talk of getting one. (Pl. Dep. pp. 60-61 and Ex. 3) He wanted privileges regarding the scans if and when it arrived. The letter was addressed to defendant's Credentials Committee. According to defendant's bylaws, physicians seeking staff privileges must undergo a review by the Credentials Committee, a recommendation process with the Medical Executive Committee, and then receive a final decision by defendant's Board of Directors. (Currin Aff. Att. A pp. 20-22)

On January 10, 2003, the Chairman of the Credentials Committee wrote a letter to plaintiff informing him that the Committee did not consider his applications. The letter stated that the PET request was not considered because defendant did not offer PET services. The nuclear medicine request was not considered because defendant had "an exclusive contract for diagnostic imaging including nuclear medicine."[2] (Pl. Dep. Ex. 3)

---

[2]Defendant did begin providing PET scans in 2004. Those scans are handled by defendant's Radiology Department and are covered under the same exclusive
(continued...)

Plaintiff did not simply accept this outcome, but instead wrote a letter to the Executive Committee. (Id.) In that letter, he acknowledged that his request to interpret nuclear medicine studies was denied because defendant's Radiology Department had an exclusive contract. However, he argued that nuclear medicine was not part of radiology and that one type of nuclear medicine studies, cardiac perfusion scans, were being interpreted by cardiologists and nuclear medicine physicians. The Executive Committee responded to this with yet another letter reminding plaintiff that defendant "has a Professional Services Agreement with the Burlington Radiological Associates that is exclusive for supervision and interpretation of nuclear medicine procedures other than heart scans and therapeutic nuclear medicine procedures." (Id.) For this reason, it did not grant plaintiff's privileges request.

Following this second denial of his request for additional privileges, plaintiff appealed directly to defendant's Board of Directors. The Board not only reiterated that granting plaintiff or others the privileges he sought would breach defendant's exclusive agreement with Burlington Radiological, but also reviewed the propriety of the exclusive agreement. It found that the agreement was effective in coordinating and administering radiology services, developing working relationships between doctors, hospital staff and departments, reducing costs, improving quality,

---

[2](...continued)
services contract. (Currin Aff. n.1) Therefore, all of the privileges sought by plaintiff will be treated the same for the purposes of analyzing his claims.

assuring that doctors perform sufficient procedures, and assuring compliance with licensing and accreditation policies. (Currin Aff. ¶ 9) Eventually, when his efforts to gain privileges using the procedures set up in defendant's bylaws were unsuccessful, plaintiff filed his lawsuit.

## **Legal Standards**

Summary judgment should be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The Court must view the evidence in a light most favorable to the non-moving party. Pachaly v. City of Lynchburg, 897 F.2d 723, 725 (4th Cir. 1990). When opposing a properly supported motion for summary judgment, a party cannot rest on conclusory statements and mere allegations, but must provide specific facts and evidence, particularly when that party has the burden of proof on an issue. Id. "The summary judgment inquiry thus scrutinizes the plaintiff's case to determine whether the plaintiff has proffered sufficient proof, in the form of admissible evidence, that could carry the burden of proof of his claim at trial." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993) (emphasis added). A mere scintilla of evidence will not suffice. There must be enough evidence for a jury to render a verdict in favor of the party making a claim. Sibley v. Lutheran Hosp. of Maryland, Inc., 871 F.2d 479 (4th Cir. 1989).

Because plaintiff's second claim is a contract action brought under North Carolina law, special rules apply to that claim. This Court must follow the law of North Carolina. If that law is unclear, the Court must rule in such a manner as it appears the highest state court would rule if presented with the issue. Where the state's highest court has not decided the particular issue, the Court will examine the rulings of the lower state courts. Rulings of the lower courts may be considered as persuasive evidence of state law, but they are not binding on the Court should it be convinced the highest court would rule to the contrary. <u>Sanderson v. Rice</u>, 777 F.2d 902, 903 (4th Cir. 1985), <u>cert</u>. <u>denied</u>, 475 U.S. 1027, 106 S.Ct. 1226, 89 L.Ed.2d 336 (1986). Furthermore, the Court will rule on state law as it exists, as opposed to surmising or suggesting an expansion of state law. <u>Burris Chemical, Inc. v. USX Corp.</u>, 10 F.3d 243 (4th Cir. 1993).

## Discussion

### Section 1981 Claim

Plaintiff's primary claim for relief centers around his contention that defendant violated 42 U.S.C. § 1981 by denying the additional privileges he requested based on the fact that he is "foreign born." Defendant's first argument in favor of dismissal of that claim is that § 1981 does not provide for a cause of action for discrimination due to foreign birth or national origin.

Section 1981 enumerates several areas of rights and gives all persons in the United States the same rights in these areas as are "enjoyed by white citizens." In evaluating this statutory

language, the United States Supreme Court has determined that it authorizes claims based on "racial discrimination." St. Francis College v. Al-Khazraji, 481 U.S. 604, 613, 107 S.Ct. 2022, 2028, 95 L.Ed.2d 582 (1987). However, it then broadly construed this term by finding that it was intended to "protect from discrimination identifiable classes of persons who are subjected to intentional discrimination solely because of their ancestry or ethnic characteristics." Id. It concluded that a plaintiff could raise a claim based on ethnicity (Arab in that case), but not solely on the nation of his origin. Id.

Here, plaintiff's complaint alleges that discrimination is occurring based on "his country of origin." (Complaint ¶ 9) His proposed amended complaint made the identical allegation. (Proposed Amended Complaint ¶ 9) Likewise, the arguments in his response brief are phrased in terms of "foreign born" and "American born" physicians. Finally, plaintiff stated in his deposition that he did not believe that his race (Caucasian), ancestry (Aryan), or ethnicity played a part in the discrimination he claims to have suffered. (Pl. Dep. pp. 44-46) Instead, he attributes it to the fact that he is not American-born and to the geopolitical issues that exist between the United States and Iran. (Id.) In short, nowhere does plaintiff attribute defendant's motives in denying privileges to anything that could be construed to be "race." Instead, his arguments all turn on country of origin, a basis which the Supreme Court stated in St. Francis College was not covered by

-8-

§ 1981. For this reason alone defendant's motion should be granted as to plaintiff's claim under § 1981.

Even if the Court were to somehow construe plaintiff's arguments as raising a cognizable claim under § 1981, the claim would still fail for a lack of proof. Section 1981 claims are analyzed using the same proof scheme as is used in claims brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. (Title VII). Williams v. Staples, Inc., 372 F.3d 662, 667 (4th Cir. 2004).[3] This proof scheme is set out in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the McDonnell Douglas paradigm, a plaintiff can prove a claim of racial discrimination with either direct evidence or by using the prima facie case rebuttable presumption. Moore v. City of Charlotte, NC, 754 F.2d 1100, 1104-05 (4th Cir.), cert. denied, 472 U.S. 1021, 105 S.Ct. 3489, 87 L.Ed.2d 623 (1985).

Where, as here, a plaintiff has provided no direct evidence of racial discrimination, McDonnell Douglas allows a plaintiff to advance his case by relying on a rebuttable presumption of discrimination through establishing a prima facie case. Generally, a plaintiff must prove a set of facts from which the law allows a jury to conclude that, in the absence of any further explanation, defendant's treatment of him was the product of racial

---

[3] Neither party has analyzed plaintiff's claims using the McDonnell Douglas framework. However, the Court will do so because this is the proper method under Fourth Circuit precedent, because of plaintiff's pro se status and because it aids in organizing the somewhat diffuse arguments in the parties' briefs.

-9-

discrimination.  Duke v. Uniroyal Inc., 928 F.2d 1413, 1418 (4th Cir.), cert. denied, 502 U.S. 963, 112 S.Ct. 429, 116 L.Ed.2d 449 (1991).  If plaintiff succeeds in producing evidence to support this prima facie case, defendant must then come forward with a legitimate, nondiscriminatory reason for its allegedly discriminatory actions.  Should it do so, the ultimate burden then switches back to plaintiff to show that defendant's proffered reason for its actions is a pretext for illegal racial discrimination.  Bryant v. Aiken Regional Medical Centers Inc., 333 F.3d 536, 544-545 (4th Cir. 2003), cert. denied, 540 U.S. 1106, 124 S.Ct. 1048, 157 L.Ed.2d 891 (2004).

In order to establish a prima facie case for the type of claim he is alleging here, plaintiff must show that (1) he is a member of a protected class, (2) he wished to enter into a contractual relationship with defendant, (3) he met the regular requirements defendant had for similarly situated persons seeking to enter into contracts, and (4) he was denied the chance to enter a contract that was otherwise given to white applicants.  Williams, 372 F.3d at 667-668.  Unfortunately for plaintiff, he cannot establish these elements.

As previously discussed, plaintiff views the denial of the privileges he sought as stemming from the fact that he is foreign-born.  He does not feel that his race or ethnicity played a part in the decision.  This creates a failure on the first element of his

case given that the classes protected by § 1981 are racial groups and subgroups. As for the second element, there appears to be no dispute that plaintiff wanted to enter into a contract with defendant. However, the third and fourth elements cause him further problems.

Plaintiff has not pointed to any requirements for similarly situated people or, for that matter, to any similarly situated people. To be similarly situated in this case, a person would have to be a physician who sought the type of privileges plaintiff sought, was qualified for those privileges, and was not part of Burlington Radiological Associates. So far as the record indicates, plaintiff is the only such person. This means that he has not established the third element of his prima facie case.

Perhaps even more importantly, plaintiff also cannot establish the fourth element. This is because there is no evidence that white persons, or American-born persons, or any persons whatsoever were afforded the opportunity to enter into the contract he sought with defendants, i.e, a contract for the right to interpret PET or nuclear medicine studies that are covered by the exclusive contract with Burlington Radiological Associates. The only evidence in the record shows that the exclusive contract was treated as such and honored by defendant with no exceptions for anyone. (Currin Aff. ¶ 10)

-11-

Case 1:04-cv-00214-JAB   Document 50   Filed 07/21/05   Page 11 of 17

In his response brief, plaintiff makes a number of claims, none of which have merit. First, he claims that defendant had previously "carved out" areas of exclusivity from the agreement with Burlington Radiological and that it could have done the same to accommodate his request when defendant and Burlington Radiological renewed their agreement in 2003. His argument fails for several reasons. First, it is entirely speculative. There is no evidence that, even had defendant sought to amend its agreement in the way that plaintiff suggests, Burlington Radiological would have agreed to the amendment. Second, the past "carving out" that plaintiff refers to occurred in 1999 when cardiac perfusion scans were removed from the exclusive contract. Plaintiff states, without citation to the record, that this was done at the request of the Kernodle Clinic, a large group of doctors and other medical staff which operate several offices and practice in a number of areas of medicine. (Pl. Proposed Exhibits Ex. B.) Plaintiff has not shown that he is a part of such a large group. Therefore, he has not shown that he is similarly situated to the entity for which a past exception was allegedly made. Also, plaintiff himself was a beneficiary of the past "carving out" because he also gained the right to interpret the cardiac scans that had previously been covered by the exclusive contract. (Currin Aff. p. 6) In that respect, he is being treated exactly the same as the Kernodle

Clinic and its doctors. No other exception was made just for those doctors.

Next, plaintiff's pleadings and letters often mention the fact that he feels he is best qualified to render the services that the privileges he seeks would allow. Even if true, it is immaterial. Laws against discrimination address only that particular problem, not all poor or unwise choices. See, e.g., Hawkins v. PepsiCo, Inc., 203 F.3d 274, 281 (4th Cir.), cert. denied, 531 U.S. 875, 121 S.Ct. 181, 148 L.Ed.2d 125 (2000)(discussing this concept in relation to Title VII). Defendant has produced evidence that it denied plaintiff privileges because they were covered under the exclusive contract. It also provided him with legitimate, nondiscriminatory reasons for the existence of that contract. All of the evidence indicates that defendant believed that having the contract in place was the best course for its patients and general operations. Whether this was a wise decision or not can be a matter for debate, but the outcome of that debate is outside the reach of civil rights laws.

Third, plaintiff complains in his response that, while nearly 12% of defendant's medical staff are foreign-born, all medical directors and committee chairmen are American-born. He does not point to evidence supporting the portion of this statement concerning the directors and committee chairs. That aside, even if his statement is true, the simple fact that he is was born in a

foreign country and some of the persons denying his request for privileges were born in this country does not prove his case. See Hawkins, 203 F.3d at 282 (not all conflicts between persons of different races are due to race); Irby v. Virginia State Board of Electors, 889 F.2d 1352, 1359 (4th Cir. 1989), cert. denied, 496 U.S. 906, 110 S.Ct. 2589, 110 L.Ed.2d 270 (1990)(fact that judges were white did not mean other races were discriminated against). Plaintiff must provide some other evidence suggesting that this difference led to discrimination. He has not.

Finally, plaintiff asserts that the privileges he seeks are not properly classified as radiology. Again, this is irrelevant even if it is true. Whether or not the classification is technically correct, defendant considers the nuclear medicine services plaintiff seeks to render to be covered by defendant's Radiology Department and they are explicitly listed in the contract with Burlington Radiological Associates. (Currin Second Aff. ¶ 6, Pl. Dep. p. 63, and Currin Aff. n.1 and Att. B. p. 1)

In the end, plaintiff does not have evidence to support three of the four elements of his prima facie case. Also, even if he did, defendant has proffered its exclusive agreement as a legitimate, nondiscriminatory reason for the denial of the privileges plaintiff sought. For essentially the reasons already discussed above, plaintiff does not have evidence showing that this reason is simply a pretext for discrimination against him because

-14-

of his race or, for that matter, for any other reason.[4] The failure to prove the prima facie case and the failure to rebut defendant's nondiscriminatory reason for its actions provide additional bases for granting defendant's motion for summary judgment.

## Breach of Contract Claim

In order to prove a breach of contract claim under North Carolina law, plaintiff must show that (1) the parties had a valid and enforceable contract and (2) defendant breached that contract. Jackson v. California Hardwood Co., Inc., 120 N.C. App. 870, 871-872, 463 S.E.2d 571, 572-573 (1995). Plaintiff is unable to do this because he has not pointed to evidence that any contract existed between himself and defendant which required that it grant him the privileges he requested.

In support of his breach of contract claim, plaintiff makes a statement that defendant's actions violate the terms of some of defendant's bylaws and then lists certain sections of defendant's bylaws. He does not explain how the bylaws came to be part of a contract between himself and defendant. Nor is it apparent why

---

[4]As defendant points out in its reply brief, plaintiff has not explained why, if it was intent on discriminating against him because he was Iranian, it granted him privileges in several areas and only denied him the privileges covered by the exclusive contract. This raises a strong inference that the exclusive contract, not plaintiff's race or birthplace, was the reason for defendant's decision. See, e.g., Proud v. Stone, 945 F.2d 796, 797 (4th Cir. 1991)(it does not make sense to hire workers from a group one dislikes only to discriminate against them later.)

-15-

they would be.  In fact, the North Carolina Court of Appeals has addressed the issue of whether or not hospital bylaws are part of a contract between a hospital and a doctor with staff privileges. <u>Virmani v. Presbyterian Health Services Corp.</u>, 127 N.C. App. 71, 76-77, 488 S.E.2d 284, 287-288, <u>rev</u>. <u>denied</u>, 347 N.C. 141, 492 S.E.2d 38 (1997).  That court stated that "the mere enactment of a set of bylaws pursuant to [a] statute is a preexisting duty and cannot itself constitute consideration for the formation of a contract." <u>Id</u>.  Defendant is required by North Carolina statute to create bylaws addressing the granting and denial of privileges. N.C. Gen. Stat. § 131E-85.  However, the court in <u>Virmani</u> did state that a contract could be formed where a hospital offers, and a doctor accepts, privileges.  The bylaws are then a part of that contract if the offer of privileges is conditioned on the physician abiding by them.  <u>Virmani</u> at 76-77, 488 S.E.2d at 287-88.

Here, plaintiff sought an offer of privileges, but that offer was not extended.  Therefore, a contract of the type described in <u>Virmani</u> was not formed.  Nor would the fact that plaintiff has been granted other privileges in the past affect this outcome.  If those prior grantings of privileges formed contracts, those contracts would apply only to the privileges offered and accepted.  They would not apply to the separate privileges later sought by plaintiff.  The undisputed evidence, indeed the entire basis for plaintiff's § 1981 claim, is that no offer by defendant was ever

-16-

Case 1:04-cv-00214-JAB   Document 50   Filed 07/21/05   Page 16 of 17

made regarding the privileges involved in this case. Because no contract existed, defendant could not breach it, even if it violated its bylaws.[5]  Defendant's motion for summary judgment should be granted on this claim as well.

**IT IS THEREFORE ORDERED** that defendant's motion to strike plaintiff's expert designations (docket no. 32) and plaintiff's motion to file depositions and exhibits (docket no. 38) be, and the same hereby are, granted.

**IT IS RECOMMENDED** that defendant's motion for summary judgment (docket no. 34) be granted and that Judgment be entered dismissing this action.

_____
**United States Magistrate Judge**

July 21, 2005

---

[5] It does not appear that defendant violated its bylaws, in any event. Some of the provisions cited by plaintiff deal with discrimination. (Pl. Dep. Ex. C. §§ 2.4, 2.6)  For the reasons set out as to the § 1981 claim, these were not violated.  One states that privileges will not be granted or denied based on affiliations with a medical group. (Id. § 2.3)  Plaintiff was denied privileges because granting them would have violated the exclusive contract, not simply because plaintiff was or wasn't affiliated with any particular medical group. Other provisions set out the qualifications for the granting of privileges and the basis for determining privileges. (Id. §§ 3.2.1, 6.1, 6.2.2)  These provisions either set out minimum qualifications and do not address the applicability of exclusive contracts or allow issues related to quality of patient care or information which the Board of Directors deems appropriate to be considered.  Obviously, the Board deemed the existence of the exclusive contract to be important and also noted quality of care and hospital functioning as part of its reasons for that decision.

-17-